Ruffin, Judge.
The plaintiff being unable to shew a special agreement, is obliged to rely upon an implied promise, founded on his services. The judge properly left it to the jury to find whether there was or was not such a promise, as they should judge from the circumstances, that it was in the contemplation of the parties that the services were to be gratuitous or compensated. Had the instruction stopped there, perhaps it would be unexceptionable ; though I have a strong impression, which may possibly arise from the involuntary emotion of detestation of the odious irreverence and ingratitude of a son, who says to a widowed mother the day he is twenty-one, “ pay me now for all I do,” that the plaintiff ought to have offered evidence to raise affirmatively a presumption, that his time and labor were understood clearly, by both parties to be given for a price. In the present case however, there is no necessity for saying that such is the law. The court after leaving the circumstances to the jury, told them, that the relation of parent and child, with all the incidents thereto, in this case was not-one of the circumstances, from which they could infer any thing. That I think and feel, is clearly wrong. Compensation is expected from strangers, because they have no right, legal or moral, to another’s time. Prima facie therefore, a promise to pay is presumed. It may be so likewise, for aught I know, in the case of parent and child generally. But in such a case as the present, the relation is a fact whicli among others, the jury have a right to consider, in connexion with the circumstances in life of the parties, and their whole conduct before and after the arrival of the child at ful! age, to rebut the presumption of a promise, which would arise in the case of *350 a stranger. It is a conclusion of fact with the jury; and they have a right to avail themselves of all the cir-cumstanc.es, including this relation, with the weight they think it entitled to, from their own feelings as sons and fathers, and from their knowledge of our state of society. It is not an irrelevant circumstance but is a strong one. With me, were 1 on the jury, it would be hard to get over — it is true, the son is not bound in law to serve his parent after twenty-one. But is there no bond but that of the law ? No gratitude for bounties already bestowed, no filial piety, no affectionate regard — nothing to keep the son under the maternal roof, but the prospect of gain ? And if gain be the object, does it follow that it was to be in the shape of annual wages and none other ? It might be, that the son himself did not choose to labor abroad j that he had no other means of livelihood ; was not fit for other business ; had no estate, and would not submit to be overseer from home — in fine, that it was a continuation of parental favor to suffer him to remain in, what he had not elsewhere, a comfortable home — by the parent too he might expect his attention, and even his labors to be more fully requited, than by any other person, though from the latter he should get wages, and from the former none. He might look to further advancement; or to a liberal legacy ; the more liberal because his tenderness and assiduities made him a favorite. It cannot be possible, that the head-of an harmonious household must drive each member off, as he shall arrive at age, or be bound to pay him wages, or for occasional services, unless he shews that it was agreed tiiat he should not pay. Such a position offends the moral sense. If true, it would dissolve that connexion, the duties and the enjoyment of which are the cement which unites families. It is the interest of society at large to preserve that union, and make it as close and cordial as our selfish natures w ill allow — as yet it has not in practice been deemed, more than it has been established in morals, that ygars of le-ga! maturity seveied altogether the tie between parent and child ; legal control expires, it is true, but the relation and all the feelings incident to it remain, to give *351 a character to, and raise presumptions concerning their acts towards each other, essentially differing from presumptions from the like dealings between strangers. I do not trust myself to say yet, that the want of evidence of an express contract is evidence that there was no contract ; though I believe I would, if necessary, in such a case as this, when the son merely continues his residence with his mother, receives his ordinary supplies from her, as proved by articles got for him at stores being put to her account, and when lie does not prove that he discharged all the severe duties usually exacted from overseers, and may therefore have acted rather as master than served as man. But this much I must say, that the jury had at least a right to pass upon the weight of the actual presumptions arising from the relation, both in estimating the wages which the plaintiff ought to be allowed, if any, and in determining whether he was to have any, except what the mother chose, in her natural kindness to bestow. In other words, whether they were to live together after, as they had done before the son became of age. I think such claims, without probable evidence of á contract, ought to be frowned on by courts and j uries. To sustain them tends to change the character of our people, cool domestic regard, and in the place of confidence, .sow jealousies in families. There must be a new trial.
Henderson, Chief-Justice, concurred.